UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED BANK AND TRUST COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-4316** |
| **FEDERAL RESERVE BANK OF ATLANTA AND THE KANSAS BANKERS SURETY COMPANY** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by plaintiff, Liberty Bank and Trust Company[1] (Doc. #54), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendant, Gulf Coast Bank & Trust Company (Doc. #60), is **DENIED**.[2]

---

[1] This suit was originally filed by United Bank and Trust Company. On April 1, 2009, United Bank and Trust Company merged with Liberty Bank and Trust Company, and Liberty Bank and Trust Company became the plaintiff in this action.

[2] Liberty Bank and Trust Company filed a Motion to Strike Gulf Coast Bank & Trust Company's Motion for Summary Judgment (Doc. #64), arguing that the motion was untimely. That motion is **DENIED**.

Liberty Bank and Trust Company also filed a Motion to Strike Gulf Coast Bank & Trust Company's Witness and Exhibit List (Doc. #65). The motion is rendered moot by the court's granting of Liberty Bank and Trust Company's Motion for Summary Judgment.

**BACKGROUND**

This matter comes before the court on cross-motions for summary judgment filed by plaintiff, Liberty Bank and Trust Company, and defendant, Gulf Coast Bank & Trust Company. Each party contends that there are no disputed issues of material fact, and that this matter is ripe for summary judgment.

United Bank and Trust Company, which merged with plaintiff, Liberty Bank and Trust Company, was a community bank headquartered at 2714 Canal Street in New Orleans, Louisiana. In the regular course of business, plaintiff sent cash letters to the Federal Reserve Bank of Atlanta through Fiserv Solutions, Inc., a company that provides data processing services.[3]

On August 29, 2005, plaintiff's corporate office sustained flood damage as a result of Hurricane Katrina. After the storm, plaintiff reopened in Opelousas, Louisiana. Plaintiff's operations were interrupted due to the storm and the resulting move.

On October 19, 2005, plaintiff sent a cash letter to the Federal Reserve through Fiserv that contained $121,748.46, in deposits. The amount was not credited to plaintiff's account. However, on October 21, 2005, the Federal Reserve put Gulf Coast on notice that Gulf Coast had received an "extra bundle" in the amount of $121,748.46.[4] Gulf Coast did not have a cash letter, or a group of cash letters, on October 19, 2005, that totaled $121,748.46. On November 14, 2005, Joe Spampneto,

---

[3] A cash letter is a group of checks that are deposited by account holders for payment. The cash letter is sent to the Federal Reserve for processing. Then the checks are drawn upon the accounts of other banks and credited to the bank that sent the cash letter.

[4] An extra bundle is an amount above the total amount of the checks a bank has sent to the Federal Reserve for processing.

a Gulf Coast employee, made an entry on the account reconciliation that Gulf Coast had an extra bundle in the amount of $121,748.46. In August 2006, Gulf Coast used the $121,748.46, to reconcile its books.

In 2008, plaintiff conducted an internal audit, and found that the Federal Reserve did not apply certain cash letters to its account in 2005 and 2006, including the October 19, 2005, cash letter in the amount of $121,748.46. Plaintiff's Chief Financial Officer, Michael Wallace, contacted the Federal Reserve to discuss the matter. On August 11, 2008, Sue Reisinger of the Federal Reserved spoke with Spampneto of Gulf Coast about the $121,748.46, extra bundle. Spampneto informed Reisinger that Gulf Coast did not have anything outstanding on its books. Then, on October 6, 2008, Spampneto and Debbie Alvarez, also of Gulf Coast, told Reisinger that Gulf Coast used the $121,748.46, to balance its work. Reisinger's investigation report states:

> Through EWA Data Warehouse records, we have located HSC (cash letter correction in reconcilement) credit entry dated 10/21/05 for Extra Bundle (EBDL) to Gulf Coast Bank, ABA 265070435, FRB reference # 1786921OCT05. Credit given to wrong DI. No record of request for reversal (See Screen Shot # 5 Below of credit to Gulf Coast Bank).

In March 2009, the Federal Reserve informed plaintiff that Gulf Coast was the bank that received plaintiff's $121,748.46, credit. After an attempt to amicably resolve the matter, plaintiff filed added Gulf Coast as a defendant to this action.[5]

---

[5] Plaintiff had originally filed suit against the Federal Reserve and its insurer, The Kansas Bankers Surety Company, asserting claims regarding the October 19, 2005, cash letter and other improper debits and credits to plaintiff's account at the Federal Reserve. In the amended complaint, plaintiff added Fiserv as a defendant.

## ANALYSIS

**1.      Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**2.      Plaintiff's Complaint Against Gulf Coast**

In its complaint against Gulf Coast, plaintiff specifically alleges that Gulf Coast was unjustly enriched by its receipt of and refusal to return the October 19, 2005, cash letter in the amount of $121,748.46.  Plaintiff also alleges that:

> On information and belief, on some specifically unknown date in 2008, after United Bank first became aware of discrepancies in an internal audit in the first quarter of 2008, Federal Reserve notified Gulf Coast Bank that it had been unjustly credited with the October 19, 2005 cash letter totaling $121,748.46, but Gulf Coast Bank

4

> refused to return the funds to the Federal Reserve for proper distribution to United Bank.
>
> Upon being advised that Gulf Coast Bank was erroneously credited with the October 19, 2005 cash letter totaling $121,748.46, Howard Brooks, President and CEO of United Bank and Trust, immediately contacted Guy Williams, President and CEO of Gulf Coast Bank to try and amicably resolve the erroneous misposted credit; however Gulf Coast Bank has refused to return the unjustly enriched credit.

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief. To comply with Rule 8(a)(2) a plaintiff does not need to plead specific facts, but only "'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007) (quoting Conley v. Gibson, 78 S.Ct. 99, 103 (1957)). Further, if a complaint alleges facts upon which relief can be granted, the form is not important, even if it does not correctly categorize the legal theory giving rise to the claim. Peavy v. WFAA-TV, Inc., 221 F.3d 158, 167 (5th Cir. 2000) (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. 1981)).

Plaintiff's complaint puts Gulf Coast on notice that it has a claim for conversion. "Conversion is defined as an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently, or for an indefinite time." Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir.1995). Plaintiff's complaint states that Gulf Coast had possession of plaintiff's

property and that plaintiff was deprived of possession. These facts clearly put Gulf Coast on notice of plaintiffs' claim against it for conversion.

**3. Conversion**

Plaintiff argues that Gulf Coast is liable to it for conversion because it erroneously obtained possession the October 19, 2005, cash letter in the amount of $121,748.46, that belongs to plaintiff. Gulf Coast argues that it is not liable for conversion because the Federal Reserve allegedly failed to credit approximately $127,000, to its account around the time it received the extra bundle in the amount of $121,748.46. Gulf Coast argues that it simply used the $121,748.46, extra bundle to offset the approximately $127,000, due to it from the Federal Reserve instead of pursuing its alleged missing credits.

"Conversion is defined as an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently, or for an indefinite time." Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir.1995). "The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights." F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C., 860 So.2d 644, 649 (La. Ct. App. 2006) (citing Aymond, v. State, Dept. Of Revenue and Taxation, 672 So.2d 273, 275 (La Ct. App. 1996)). Specifically, the tort of conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the

6

chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel. Daul Drilling Co. v. Mills Equipment Investments, Inc., 721 So.2d 853, 856 (La. Ct. App. 1998). Further, "[a]lthough a party may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion." Louisiana Health Care Group, Inc., Allegiance Health Mgmt., Inc., 32 So.3d 1138, 1143 (La. Ct. App. 2010) (quoting Kinchen v. Louis Dabdoub Sell Cars, Inc., 912 So.2d 715, 718 (La. Ct. App. 2005), writ denied, 925 So.2d 544 (2006)).

Gulf Coast came into possession of plaintiff's cash letter in the amount of $121,748.46, due to a mistake in routing at the Federal Reserve, i.e. it acquired possession in an unauthorized manner. Also, once Gulf Coast learned that the $121,748.46, belonged to plaintiff through its communications with the Federal Reserve and with plaintiff, it continued to withhold possession from plaintiff. Further, Gulf Coast has demonstrated an intent to act in derogation of plaintiff's rights. The Federal Reserve informed Gulf Coast of the extra bundle on October 21, 2005. Then, on November 14, 2005, Spampneto entered the amount as an extra bundle on Gulf Coast's account reconciliation. Reisinger discussed the extra bundle with Spampneto on August 11, 2008, and again on October 6, 2008. Spampneto testified that Reisinger basically said "you got the money, and we don't think it belongs to you." Additionally, Resinger testified that she "did not" and "would not" advise Gulf Cost that it was acceptable to use the $121,748.46, extra bundle to balance

7

Gulf Coast's work. In spite of its knowledge regarding the ownership of the money, Gulf Coast has not returned it to plaintiff. Therefore, Gulf Coast is liable to plaintiff for conversion.[6]

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by plaintiff, Liberty Bank and Trust Company (Doc. #54), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendant, Gulf Coast Bank & Trust Company (Doc. #60), is **DENIED**.

New Orleans, Louisiana, this __16th__ day of July, 2010.

*(signature)*
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

[6] In its reply in support of its motion for summary judgment, Gulf Coast points out that it pleaded the affirmative defenses of contributory and/or comparative negligence and failure to mitigate damages. Gulf Coast bears the burden of proof on its affirmative defenses. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). To prevail on an affirmative defense, the defendant "must establish beyond peradventure all of the essential elements of the . . . defense." Id. Gulf Coast has not presented any evidence that even suggests that plaintiff was negligent in any way or failed to mitigate its damages. To the contrary, the evidence before the court demonstrates that plaintiff took reasonable steps to recover its missing cash letters as soon as it realized that there was a discrepancy.

Gulf Coast also contends that it is entitled to a credit for the amounts that its co-defendants paid to plaintiff as settlement of plaintiff's claims against them. Plaintiff has presented evidence that shows that the settlements were for other claims against those co-defendants, and/or that at all relevant times it reserved its rights against Gulf Coast to pursue the $121,748.46 claim. Therefore, Gulf Coast is not entitled to a credit for it's co-defendant's settlements with plaintiff.